1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES  DISTRICT COURT**

For the Northern District of California

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREG LEMMON

                Plaintiff,

      v.

CITY OF SAN LEANDRO

                Defendant.

_____/

No. C 06-07107 MHP

**MEMORANDUM & ORDER**
**Re: Cross-motions for Partial Summary**
**Judgment**

      Plaintiff Greg Lemmon and similarly situated San Leandro patrol police officers[1] brought suit against the City of San Leandro on November 16, 2006.  Plaintiff seeks an order holding that time spent donning and doffing his uniform and attendant equipment is compensable under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. section 201 et seq.  Now before the court are parties' cross-motions for partial summary judgment.  The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND[2]

      There are 54 sworn patrol officers at the San Leandro Police Department ("SLPD").  Supp. Willis Dec., ¶ 6.  Patrol officers at the SLPD are required to report to duty properly uniformed and equipped for a shift that could last from eight to twelve hours.  Id., ¶¶ 15, 21.  In addition, the officers must maintain their uniform and equipment in good order.  See George Dec., Exh. H at 31, Exh. J.

      Patrol officers are required to wear a "Class B" uniform and attendant equipment while on

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   duty.  Attarian Dec., ¶ 6.  The required portions of this uniform are: undershirt or turtleneck, uniform

2   shirt, uniform shoulder patch, badge, name tag, police badge, uniform trousers, uniform socks,

3   uniform shoes, and trouser belt.  Id., ¶ 6, Exh. A.  In addition, patrol officers are required to carry

4   other equipment, including a gun holster, ammunition, ammunition holders, handcuffs, handcuff

5   case, tear gas canister, taser, taser case, baton ring, radio case, radio and gun, all of which attach to a

6   duty belt.  Id., ¶ 7, Exh. A.  This duty belt, which may be made of leather or nylon, attaches to the

7   officers' trousers with fasteners.  Id.; Willis Dec., ¶ 23; Supp. Willis Dec., ¶ 4.  Bulletproof ballistic

8   vests are optional and are worn over the undershirt and under the uniform shirt.  Attarian Dec., ¶ 9;

9   Willis Dec., ¶ 6; Supp. Willis Dec., ¶ 4.  Wires linking the police radio to an earpiece are also

10  optional.  Supp. Willis Dec., ¶ 5.

11          With regard to the maintenance of equipment, the SLPD may inspect the officers' equipment

12  at the discretion of the supervising officer.  Attarian Dec., ¶ 11.  Weapons inspections are conducted

13  prior to each quarterly range qualification; more frequent inspections may be required at the

14  discretion of the supervising officer.  Id., ¶ 12, Exh. B.

15          Plaintiff claims the entire donning and doffing process, along with the attendant

16  maintenance, takes anywhere between 25–35 minutes per day.  Lemmon Dec., ¶ 21; Sobek Dec., ¶

17  24; Spirou Dec., ¶ 8.

18          The SLPD claims that departmental policies allow officers the option of donning and doffing

19  at home.  Willis Dec., ¶ 18.  There is no written policy allowing the officers to don and doff at home,

20  or conversely, requiring the officers to don and doff at the station.  See Lemmon Dep. at 11:11–25.

21  The SLPD, however, does seem to have an unwritten policy that, while not on duty, officers cover

22  up their uniforms.  Willis Dec., ¶ 20; Pl. Opp. at 8, 18.  At the summary judgment hearing, the city

23  stated that it "recommends" officers cover up while not on duty.  Both the Captain of Police and the

24  Chief of Police of the SLPD testified that they have personally observed partially uniformed officers

25  arrive at the police station.  Willis Dec., ¶ 7.  In addition, patrol officers have testified that they have

26  at various times taken portions of their uniform or equipment home.  Sobek Dep. at 31:8–18;

27  Henning Dep. at 48:3–13.  In fact, plaintiff admits that three similarly situated individual plaintiffs

28

1   partially don and doff at home.  Pl.'s Opp. at 20 n.13.  Nevertheless, the SLPD does provide lockers

2   to police officers in which officers may store uniforms, equipment and personal items.  Willis Dec.,

3   ¶ 19.  It appears that most officers don and doff entirely at the police station.

4

5   LEGAL STANDARD

6        Summary judgment is proper when the pleadings, discovery and affidavits show that there is

7   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

8   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

9   case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

10  genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

11  party.  Id.  The party moving for summary judgment bears the burden of identifying those portions

12  of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

13  fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party

14  will have the burden of proof at trial, the moving party need only point out "that there is an absence

15  of evidence to support the nonmoving party's case."  Id.

16        Once the moving party meets its initial burden, the nonmoving party must go beyond the

17  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

18  genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

19  party's allegations.  Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994).  The

20  court may not make credibility determinations, and inferences to be drawn from the facts must be

21  viewed in the light most favorable to the party opposing the motion.  Masson v. New Yorker

22  Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

23        The moving party may "move with or without supporting affidavits for a summary judgment

24  in the party's favor upon all [claims] or any part thereof."  Fed. R. Civ. P. 56(a).  "Supporting and

25  opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

26  admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

27  matters stated therein."  Fed. R. Civ. P. 56(e).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

3

UNITED STATES DISTRICT COURT
For the Northern District of California

DISCUSSION

"Whether an activity is excluded from hours worked under the FLSA . . . is a mixed question of law and fact.  The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law."  Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 910 (9th Cir. 2004).

Under the FLSA, it is axiomatic that employers pay employees for all hours worked.  See Alvarez v. IBP, Inc., 339 F.3d 894, 902 (9th Cir. 2003), aff'd, 546 U.S. 21 (2005); 29 U.S.C. §§ 206, 207.  Work is the "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer."  See Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944).  This definition includes "non-exertional acts."  Alvarez, 339 F.3d at 902; Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944).  The Portal-to-Portal Act of 1947, however, relieves employers from compensating employees for "activities which are preliminary or postliminary to [the] principal activity or activities."  29 U.S.C. § 254(a).

After passage of the Portal-to-Portal Act of 1947, the Supreme Court held that "activities performed either before or after the regular work shift" are compensable "if those activities are an integral and indispensable part of the principal activities for which [the] workmen are employed."  Steiner v. Mitchell, 350 U.S. 247, 256 (1956).  In Steiner, production employees at a battery plant were required to don protective work clothes before commencing work and to shower and change back at the end of the work day.  The Court held that employees should be compensated for the time spent donning and doffing their protective work clothes because the process was "integral and indispensable" to allay the dangers inherent in the principal activity of battery production.  Id.

The Ninth Circuit has held that donning and doffing of both unique and non-unique protective gear are integral and indispensable to the employee's principal activities if they were: 1) necessary to the principal work performed; and 2) done for the benefit of the employer.[3]  Alvarez, 339 F.3d at 902–03.  In Alvarez, a meat products producer required its production employees to wear protective gear, including liquid-repelling sleeves, aprons and leggings, after they got to the

4

employer's premises. It also required employees to wipe or hose the gear on-site at the end of their

shift. The court found the donning and doffing of this protective gear to be compensable. Id.

Concurrently, however, the court also held that time spent donning and doffing non-unique

protective gear was *de minimis*, and therefore not compensable as a matter of law. Id. at 904.

Ballaris, another Ninth Circuit decision, re-affirmed the test laid out in Alvarez. 370 F.3d 901. In

Ballaris, the Ninth Circuit held that workers laboring in a "clean room" at a silicon chip

manufacturing facility must be compensated for the time spent changing into "bunny

suits"—specialized suits designed to maintain the sterile atmosphere in the "clean room." Id. at 911.

In addition, the Ninth Circuit compensated the workers for time spent donning and doffing their

plant *uniforms* while on the employer's premises and worn under the "bunny suit," because "the

plant uniforms were 'required by' the employer, and because the wearing of those uniforms was for

the employers's benefit." Id. at 911 (quoting Alvarez, 339 F.3d at 903).


I.       Necessary to the Principal Work Performed

         The components of the police uniform trigger instant recognition of police officers. Along

with this identification comes deference to the authority of police officers, which is essential to the

efficient performance of police work. Katsaris Dec, ¶¶ 6–9; Brodd Dec., ¶ 7; George Dec., Exh. C;

Attarian Dep. at 50:13–23. To this end, an SLPD "Operations Directive" states that the uniform is a

symbol that is essential to the Department's police work. See George Dec., Exh. D. The patrol

officer's uniform is also part of the continuum of force. The officer's command presence—which

the uniform fosters—is the first of many points along the continuum that police officers regularly

use to enforce the law and obtain compliance from members of the public. Attarian Dep. at

50:1–51:23; Katsaris Dec., ¶¶ 7, 16. In fact, the SLPD admits that the authority conferred by the

uniform is essential to the performance of police work. Attarian Dep. at 25:1–26:16; Opp. Br. at 6–7

(uniform, along with the equipment, are "indispensable," or necessary, to the performance of the

officer's principal duties).

         A patrol officer cannot effectively do her job without her uniform. Although an officer may

UNITED STATES DISTRICT COURT
For the Northern District of California

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  perform some of her duties without the uniform, she cannot perform all of her required duties

2  without the uniform.  For instance, officers must be in full uniform for the line-up or while on patrol.

3  Furthermore, though it is theoretically possible for a police officer to do her job without her

4  uniform—as in the case of undercover police officers—it would be a practical absurdity to eliminate

5  uniforms due to the myriad benefits that officers and the SLPD obtain simply because officers are in

6  uniform.  Specifically, police uniforms are special because the uniform itself forms part of the

7  equipment.  In this respect, this court respectfully disagrees with Judge Breyer's decision in

8  Martin—it is not convinced that "[a] police officer's uniform, in and of itself, does not assist the

9  officer in performing his duties."  Martin v. City of Richmond, No. C 06-06146 CRB, 2007 WL

10  2317590, at *11 (N.D. Cal. Aug. 10, 2007) (order granting summary judgment in part and denying

11  summary judgment in part).  Unlike practically any other profession, the police uniform is part of the

12  continuum of force.  This distinguishing characteristic of the police uniform makes it necessary to

13  the principal work performed.  Thus, this court again respectfully disagrees with Judge Bryer's

14  characterization of the police uniform as "mere clothes."  Id., at *7.  Specifically, when determining

15  if the uniform is necessary to the work of a police officer, it is of great consequence that these

16  "clothes" are of a particular color and design that afford the wearer special powers and deference in

17  our society.

18       In this context, there is no distinction between the uniform and equipment because the police

19  uniform with all its component parts functions as an integrated whole that serves as an officer's

20  survival suit.  Attarian Dep. at 32:3–9; Katsaris Dec., ¶ 14; see also Alvarez, 339 F.3d at 902 (the

21  court's analysis must be context-specific).  There can be no debate that police officers' equipment is

22  necessary for them to perform their law enforcement duties.  For example, the handcuffs, taser, radio

23  and gun all obviously aid the officer in her law enforcement duties depending upon the severity of

24  the situation at hand.  That fact, however, does not compel that all time spent donning and doffing

25  the uniform and equipment be compensable.  Specifically, in the same case that the Ninth Circuit

26  held that the compensation question is context-specific, it also held that certain "integral and

27  indispensable" non-unique safety gear is non-compensable because the time spent donning and

28

6

1    doffing them was *de minimis*.  Alvarez, 339 F.3d at 904.  The donning and doffing of safety goggles

2    and hardhats held non-compensable in Alvarez were integral to employee safety and equally as

3    important as the unique gear the employees were required to don and doff.  Without the non-unique

4    safety gear, the employees in Alvarez would have been vulnerable to workplace injuries, just as

5    police officers may be without their equipment when in a dangerous situation.  Thus, in the context

6    of this case, even though the uniform and equipment function as a whole, their donning and doffing

7    are nevertheless subject to the *de minimis* rule.  Specifically, "[m]ost courts have found daily periods

8    of approximately 10 minutes *de minimis* even though otherwise compensable."  Lindow v. United

9    States, 738 F.2d 1057, 1062–63 (9th Cir. 1984).

10   　　　Defendant claims that in each donning and doffing case binding upon this court in which the

11   activity was found to be compensable, plaintiffs were required to don and doff at the employer's

12   premises.  See Steiner, 350 U.S. 247; Alvarez, 339 F.3d 894; Ballaris, 370 F.3d 901.  If the officers

13   here were explicitly required to don and doff at the station, then the donning and doffing would

14   clearly be compensable.  This is because Ballaris rested squarely on the fact that the employer there

15   required changing into uniform be done on its premises.  The court stated that "[b]ecause [the

16   employer] determined that all employees in the second plant must wear uniforms daily and must put

17   them on and take them off on the plant premises, and it adopted that rule [for business reasons], the

18   company, by its conduct, made such activities integral and indispensable to the job."  Ballaris, 370

19   F.3d at 912 (citation omitted).  Although this does argue against compensation for the instant

20   plaintiff, there is no explicit requirement in the Ninth Circuit that the preliminary or postliminary

21   activity take place on the employer's premises.[4]  This court, therefore, refuses to inject a location

22   limitation into the analysis for finding compensability under the FLSA.  In any event, most officers

23   don and doff at the station in practice—this is a strong indicia that the donning and doffing of the

24   uniform at the police station is a *de facto* requirement.  This finding is further buttressed by the

25   lockers the SLPD provides to each officer.

26   　　　Defendant also claims that basic activities, such as changing clothes, are not normally

27   compensable.  29 C.F.R. § 790.7(g) (changing clothes is normally 'preliminary' or 'postliminary');

28

7

UNITED STATES DISTRICT COURT
For the Northern District of California

see also 29 U.S.C. § 203(o) (the FLSA "exclude[s] any time spent in changing clothes or washing at the beginning or end of each workday which was excluded . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."). It claims this is especially true if donning and doffing of clothes are not required to be done on the employer's premises. See 29 C.F.R. § 790.8(c) n.65 (changing clothes may be compensable if "the changing of clothes on the employer's premises is required by law, by rules of the employer, or by the nature of the work."). The Ninth Circuit has defined "clothes" when interpreting the scope of the "changing clothes or washing" exclusion to the FLSA under collective bargaining agreements. See 29 U.S.C. § 203(o); Alvarez, 339 F.3d at 904–06. It held that "the district court correctly interpreted the 'changing clothes' exception in [the changing clothes or washing exclusion] as not including the time spent putting on personal protective equipment." Id. at 905. The court then found that: "Personal Protective Equipment is specialized clothing or equipment worn by an employee for protection against a hazard. General work clothes (e.g. uniforms, pants, shirts or blouses) not intended to function as protection against a hazard are not considered to be personal protective equipment." Id. As discussed above, it is clear that most of the police officer's gear consists of specialized equipment for protection against criminals. This holds true for the officer's uniform as well because it consists of "specialized clothing" that forms part of the continuum of force designed to protect against rogue elements and to inform the citizenry of the legitimacy of the officer's official position. Though the uniform itself is not "specialized" in its protective properties, its color, appearance and component parts provides a *gravitas* that serve as an effective deterrent against crime, thereby protecting the police officer. Thus, since the police officers' uniform and gear constitute personal protective equipment and not do not constitute "clothes," the standards stated above do not apply.[5]

The Department of Labor ("DOL") has recently issued an advisory opinion, which states that "if employees have the option and ability to change into the required gear at home, changing into the gear is not a principal activity, even when it takes place at the [place of employment]." Request for Judicial Notice, Exh. B, at 1–3 (hereinafter "DOL memo").[6] The DOL goes even further to state that

8

"[e]mployees who dress to go to work in the morning are not working while dressing even though the uniforms they put on at home are required to be used in the plant during working hours. Similarly, any changing which takes place at home at the end of the day would not be an integral part of the employees' employment and is not working time." Id., Exh. A, at § 31b13. These DOL pronouncements simply interpret "principal activity" and state that donning and doffing are not compensable, and therefore not principal activities, if the employer or the nature of the job does not mandate that they take place on the employer's premises. As described above, this court does not agree with this conclusion and holds that donning and doffing may be compensable even if performed off the employer's premises.

This court therefore also respectfully disagrees with Judge Sabraw of the Southern District of California. In Abbe v. City of San Diego, he ruled that "the relevant inquiry is not whether the uniform *itself* or the safety gear *itself* is indispensable to the job – they most certainly are – but rather, the relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises." Nos. 05cv1629 DMS (JMA), 06cv0538 DMS (JMA), 2007 WL 4146696, at *7 (S.D. Cal. Nov. 9, 2007) (order granting summary judgment in part and denying summary judgment in part). This "process" standard is not in line with Ninth Circuit precedent. Specifically, in Ballaris, the Ninth Circuit compensated workers for time spent donning and doffing their plant *uniforms* while on the employer's premises and worn under the "bunny suit," because "the plant uniforms were 'required by' the employer, and because the wearing of those uniforms was for the employers's benefit." 370 F.3d at 911 (quoting Alvarez, 339 F.3d at 903). There is no indication that the nature of the work required the process of donning and doffing the *uniform* be done on the employer's premises. Furthermore, as discussed above, this court considers the location of the donning and doffing activity to be only one of the considerations. Finally, the SLPD's policies, though somewhat lax, regarding the cover up of uniforms while off-duty and the nature of police work strongly anticipate that the donning and doffing process will likely be done on SLPD premises. The specific policy and prudential reasons, including avoidance of public confusion and increased officer preparedness, are discussed below in further detail.

9

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

II.     Done for the Benefit of the Employer

In Alvarez, the court held that the donning and doffing of protective gear benefitted the employer because it helped the employer: 1) comply with legal requirements; and 2) avoid work slowdowns and problems that would arise as a result of injuries to employees.  339 F.3d at 903.  The same is true here.  For instance, employers are required by state law to do everything reasonably necessary to protect the safety of employees.  Cal. Labor Code § 6401.  In addition, it is clear, and the SLPD admits, that donning the uniform and equipment minimizes the potential for injury to officers, which in turn benefits the SLPD because it facilitates a ready and healthy police force.  See Attarian Dep. at 27:14–21, 66:11–23.  It also helps police officers do their jobs more efficiently. The benefits of a healthy and efficient police force clearly flow to the SLPD since the SLPD must hire more or less police officers depending upon its force's efficiency and well being.  Finally, if the uniform is required by the SLPD, there is a presumption that it benefits the SLPD since it would not have required the uniform otherwise.  Thus, even if no efficiency or health benefits flow to the SLPD, the donning and doffing of uniforms benefit the SLPD if done to comply with SLPD requirements.

It must be noted, however, that only those aspects of the uniform and equipment required by the SLPD meets this prong.  Employees are not to be compensated for acts they perform of their own volition, such as donning ballistic vests or radio wires, even if these acts benefit the SLPD. Compensation for such acts would leave the employer with little control over which acts are compensable and which are not.

The benefits flowing to the employer are underscored by the lockers provided by the SLPD to every patrol officer.  This demonstrates that the donning and doffing of uniforms at the station, though not required, are nevertheless very important to the SLPD.  The vast majority of patrol officers at least partially don and doff at the police station, thus avoiding an array of potential problems associated with donning and doffing off-site.  For instance, the general public will not be confused by commuting off-duty uniformed officers.  Though parties agree that the SLPD has an unwritten policy requiring officers to cover-up while not on duty but in uniform, this policy seems

10

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  more of a recommendation or a "best practice," and not a mandate.  The citizenry, as well as the

2  police officers, run the risk of being placed in an undesirable situation if an off-duty police officer is

3  perceived as being on-duty.  Donning and doffing at the station further avoid a situation where

4  officers forget an essential piece of equipment at home.  This benefits the SLPD because it makes

5  officers more likely to be in complete uniform and on-time when reporting for duty.

6      It must be noted that benefits to the SLPD from donning and doffing at the station do not

7  include: 1) an avoidance of crime on commuting off-duty uniformed officers; 2) the officers' mental

8  preparation before reporting for duty; 3) the avoidance of back injuries; and 4) a reduction of bio-

9  hazard exposure with respect to the officers' families.  First, criminals may always target commuting

10 off-duty officers independent of whether the officers don and doff at the police station.  It would not

11 be difficult for a criminal to follow an off-duty plain-clothed police officer.  Second, plaintiff has not

12 presented any evidence that demonstrates that the station is a better location than the officers' homes

13 for the officers to "mentally prepare."  Third, the risk of back injury would not be greatly increased

14 if officers wear their duty belts while commuting because officers must continuously wear the belt

15 during an eight to twelve hour shift.  Attarian Supp. Dec., ¶ 8.  Fourth, there is no risk of bio-hazard

16 exposure to the officers' families because if an officer comes into contact with bio-hazardous

17 materials while on duty, the officer is allowed to immediately remove his or her uniform, shower at

18 the station, and don a fresh uniform.   Willis Dec., ¶ 26.

19      In sum, since both prongs of <u>Alvarez</u> are met, this court holds that the time spent donning

20 and doffing the required uniform and gear is compensable under the FLSA.  The integral and

21 indispensable nature of the donning and doffing makes those activities principal to a police officer's

22 duties.  The Supreme Court has held that the time between conducting principal activities is

23 compensable.  <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21 (2005) (where donning and doffing protective gear

24 was integral and indispensable to employees' principal activity, such donning and doffing was itself

25 a principal activity and thus time spent walking to and from changing and work areas was not

26 excluded from compensation).  It must be noted that in this case, the time between the principal

27 activities of donning and doffing and the next principal activity of policing is not generally

28

11

UNITED STATES DISTRICT COURT
For the Northern District of California

1  compensable.  For instance, if officers choose to don the uniform at home, their commute is not

2  compensable for three reasons.  First, the Portal-to-Portal Act specifically excludes from

3  compensation "walking, riding, or traveling to and from the actual place of performance of the

4  principal activity or activities which such employee is employed to perform."  29 U.S.C. § 254(a)(1).

5  Second, compensation for the commute time would be a violation of the letter and spirit of the

6  FLSA—compensation here would be akin to compensating a police officer who is charged with the

7  care of a police dog for all the time in between feeding or training the police dog at home until the

8  next principal policing activity.  See Leever v. Carson City, 360 F.3d 1014, 1017 (9th Cir. 2004).

9  That would effectively make the "continuous workday" rule a "continuous pay" rule.  Third, IBP is

10  factually distinguishable because the employer there required its employees to don and doff at the

11  employer's premises immediately preceding and succeeding the compensable workday.

12

13  CONCLUSION

14          For the foregoing reasons, plaintiff's motion for partial summary judgment is GRANTED

15  and defendant's motion for partial summary judgment is DENIED.

16

17  Dated: December 7, 2007

18                                                     _____
                                                       MARILYN HALL PATEL
19                                                     United States District Court Judge
                                                       Northern District of California

20

21

22

23

24

25

26

27

28

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ENDNOTES

1.      The police officers are similarly situated under 29 U.S.C. section 216(b) of the Fair Labor Standards Act.

2.      Plaintiff's Proposed Supplemental Statement of Undisputed Facts submitted on October 16, 2007, see Docket No. 52, will not be considered because this statement is opposed by defendants, see Docket No. 53, thereby making the statements therein disputed.

3.      In light of clear Ninth Circuit precedent, this court declines defendant's invitation to adopt the Second Circuit's interpretation of "integral and indispensable" as defined in Gorman v. Consol. Edison Corp., 488 F.3d 586 (2d Cir. 2007).

4.      Leever v. Carson City, 360 F.3d 1014, 1017 (9th Cir. 2004), is inapposite because there the city had conceded that caring for and training the police dog at home was compensable work under the FLSA.

5.      The language in Steiner that "changing clothes and showering under normal conditions" are not compensable is also inapplicable here because the government had conceded that issue in Steiner.  350 U.S. at 249.

6.      The court takes judicial notice of three documents pursuant to Rule 201 of the Federal Rules of Evidence.  These documents are: 1) DOL, Wage and Hour Division, Field Operations Handbook, Section 31b13; 2) DOL, Wage and Hour division, May 21 2006 Advisory Memorandum No. 2006-2; and 3) Portions of the San Leandro Administrative Code.  The accuracy of these documents cannot reasonably be questioned and have not in fact been questioned.